UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROCCO DUARDO, *et al.*,<br><br>   Plaintiffs,<br><br>  v.<br><br>CITY OF HACKENSACK, *et al.*,<br><br>   Defendants. | Case No. 17–cv–02308–WJM–ESK<br><br><br>OPINION AND ORDER |

**KIEL, U.S.M.J.**

  **THIS MATTER** having come before the Court on nonparty Assistant Prosecutor Brian N. Sinclair's motion, pursuant to Federal Rule of Civil Procedure (Rule) 45, to quash plaintiff's subpoena for his deposition (Motion) (ECF No. 98); and plaintiffs having filed opposition to the Motion (ECF No. 99); and Sinclair having filed a reply in further support of the Motion (ECF No. 100); and defendants not having filed a response to the Motion:

  1. Plaintiffs — Rocco Duardo, Scott Syble, and Allan DeLeon — are current and former Hackensack Police Department (HPD) police officers. (ECF No. 4.) Defendants are: the City of Hackensack; Frank Aquila, Tim Lloyd, and Peter Busciglio, all of whom are alleged to be former or current captains in the HPD; David Troast, the former city manager of Hackensack; and Theodore Ehrenburg, the current city manager of Hackensack. (*Id.*) Plaintiffs allege that they spoke out and instituted lawsuits to challenge various HPD policies and, consequently, they were harassed, unjustifiably disciplined in the workplace, and subjected to baseless investigations by defendants in violation of their rights under the First Amendment to the Constitution, other federal law, and state law. (*Id.*)

  2. This lawsuit was filed in April 2017, an amended complaint was filed in May 2017, and defendants answered in June 2017. (ECF Nos. 1, 4, 7.) Magistrate Judge Mark Falk, who was assigned to manage this case initially, entered an order in October 2017 setting a deadline of July 30, 2018 for fact discovery to be completed. (ECF No. 15.) In orders entered between June 2018 and October 2019, Judge Falk extended the fact discovery deadline six times to November 30, 2018, February 28, 2019, May 31, 2019, August 31, 2019, October 1, 2019, and December 31, 2019, respectively. (ECF Nos. 22, 24, 28, 32, 38, 43.)

3. This matter was assigned to me in January 2020. (ECF No. 47.) In orders entered between May 2020 and March 2021, I extended the fact discovery deadline three additional times to November 30, 2020, March 31, 2021, and April 30, 2021, respectively. (ECF Nos. 57, 78, 89.) Thus, between 2018 and 2021, the fact discovery deadline in this matter has been extended a total of 34 months over nine separate orders.

4. In a joint status letter filed by the parties on March 22, 2021, plaintiffs advised for the first time in this litigation that they intended to serve a subpoena (First Subpoena) upon Sinclair, who is an assistant prosecutor in the Bergen County Prosecutor's Office (BCPO), for his deposition. (ECF No. 88.) Sinclair was served with the First Subpoena (ECF No. 92-4) on or about March 31, 2021. (ECF No. 92-5 p.5.) Plaintiffs sought to depose Sinclair about his alleged involvement in 2017 in an Internal Affairs investigation (IA Investigation) concerning plaintiffs' conduct at an apartment during a narcotics investigation. (ECF No. 93 pp. 4–7.) The First Subpoena set the date of compliance on April 15, 2021. (ECF No. 92-4.)

5. On April 8, 2021, Sinclair filed a motion to quash the First Subpoena (First Motion). (ECF No. 92.) Plaintiffs opposed the First Motion on April 19, 2021. (ECF No. 93.) Sinclair filed a reply on April 26, 2021. (ECF No. 94.) By an order dated May 19, 2021 (May 2021 Order), I administratively terminated the First Motion for lack of jurisdiction, because the First Subpoena required compliance at an address in Philadelphia, Pennsylvania. Thus, Sinclair should have filed the First Motion in the United States District Court for the Eastern District of Pennsylvania pursuant to Rule 45(d)(3)(A). (ECF No. 95.)

6. Sinclair filed a letter request (Letter Request) to vacate the May 2021 Order, arguing that the Pennsylvania address listed for compliance on the First Subpoena was in error, and that the correct address is in Bergen County within the District of New Jersey. (ECF No. 96.) I denied the Letter Request in a text order on May 27, 2021, because the Letter Request did not set forth a basis to vacate the May 2021 Order, and I advised plaintiffs that they "may issue a subpoena correcting the jurisdictional defect, which requires compliance within this district, and using the correct form of subpoena to appear for a deposition rather than a subpoena to appear to testify for a hearing or trial." (ECF No. 97.)[1]

7. Sinclair was then served on or about June 1, 2021 with a "subpoena to testify at a deposition in a civil action" (ECF No. 98-3) in Hackensack, New Jersey

---

[1] Although not discussed in the May 2021 Order, the First Subpoena was presented on a form intended for a recipient who is required "to appear and testify at a hearing or trial in a civil action," as opposed to a deposition. (ECF No. 92-4.)

2

(Second Subpoena).  (ECF No. 98-5 p. 5.)  The Second Subpoena set the date of compliance on July 14, 2021.  (ECF No. 98-3.)

8.  Sinclair now moves to quash the Second Subpoena (Second Motion). (ECF No. 98.)  Sinclair argues that he was served with the Second Subpoena after the ninth discovery deadline extension of April 30, 2021 had expired, and that the Second Subpoena was untimely as a result.  (ECF No. 98-5 p. 5.)  In addition, Sinclair argues that neither he nor the BCPO participated in the IA Investigation.  (*Id.*)  Furthermore, Sinclair argues that to the extent plaintiffs' true intention is to depose Sinclair about a related criminal investigation (Criminal Investigation) conducted by the BCPO concerning plaintiffs, such a deposition would be barred because the Criminal Investigation is entitled to confidentiality, particularly when — as is the situation in this matter — no criminal prosecution resulted from the investigation.  (*Id.* pp. 5–7.)  In their opposition, plaintiffs offer no response to Sinclair's arguments concerning the timeliness of the Second Subpoena, nor do plaintiffs address whether the First Subpoena was otherwise timely.  (ECF No. 99 pp. 2–8.)  However, plaintiffs do offer speculation that Sinclair "was an active participant in the IA Investigation." (*Id.* p. 7.)

9.  Rule 45 authorizes a court to quash or modify a subpoena that subjects a nonparty to an undue burden or requires the disclosure of privileged or protected information in the absence of an applicable exception or waiver. Fed.R.Civ.P. 45(d)(3)(A)(iii)–(iv).  An undue burden will be found to exist when the subpoena is unreasonable or oppressive.  *See In re Lazaridis*, 865 F.Supp.2d 521, 524 (D.N.J. 2011).  In determining whether to quash a subpoena for a nonparty deposition, a court may consider several factors, including: a party's need for the deposition; the nature and importance of the litigation; the relevance of the deposition; the time period covered by the request for a deposition; and the burden imposed on the subpoenaed nonparty.  *Id.*

10.  Furthermore, the nonparty deposition sought in a subpoena must fall within the scope of the discovery that is permissible under Rule 26(b).  *See Conforti v. St. Joseph's Healthcare Sys., Inc.*, No. 17-00050, 2019 WL 3847994, at *2 (D.N.J. Aug. 15, 2019).  Pursuant to Rule 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

> importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

11. A nonparty is "afford[ed] greater protection … in discovery, and nonparty subpoenas must meet a higher standard of relevance than subpoenas directed toward parties." *Conforti*, 2019 WL 3847994, at *2. In this case, the subject of the Second Subpoena is nonparty Sinclair.

12. The Motion is granted because both the First Subpoena and the Second Subpoena were untimely. The Second Subpoena was served, and set a deadline of compliance, on a date after the discovery deadline of April 30, 2021 had elapsed. (ECF No. 98-3.) If the date of compliance in the First Subpoena, i.e., April 15, 2021, were to be referenced as the operative date, that date was merely fifteen days before the discovery deadline of April 30, 2021, even though that deadline embodied the ninth discovery extension in this matter that had been pending on the Court's docket for four years. Such a delay by plaintiffs in prosecuting their own case after several years must not be countenanced. *See Doherty v. Allstate Indem. Co.*, 734 F.App'x 817, 823–24 (3d Cir. 2018) (affirming an order quashing subpoenas for depositions that were served by plaintiffs right before the discovery deadline was set to elapse in a case that had been pending for two years, as "[t]he denial of such an eleventh-hour request is far from an abuse of discretion").

13. I scoured the entire docket for any earlier indication from plaintiffs concerning their belief that Sinclair might be required to appear for a deposition. I found none, even though Sinclair's alleged conduct that would be the subject of the inquiry at his deposition occurred four years before the First Subpoena was served. As a result, requiring compliance with the Second Subpoena at this juncture — and after the Court has already granted an additional 34 months for fact discovery over nine discovery extensions — would cause an undue burden on Sinclair and, quite frankly, would hamper the Court's efforts to shepherd this matter, which has been pending for more than four years, to a conclusion.

14. Plaintiffs are surprisingly silent in response to Sinclair's arguments as to the timeliness of the Second Subpoena. (*See* ECF No. 99.) Therefore, the Motion is granted based upon the foregoing, as compliance with the Second Subpoena would present an undue burden pursuant to Rule 45(d). *See Meiselman v. Hamilton Farm Golf Club, LLC*, No. 11-00653, 2013 WL 12164651, at *2–3 (D.N.J. June 20, 2013) (quashing plaintiffs' subpoenas for nonparty depositions, even though the subpoenas were served twenty-two days before the discovery deadline elapsed, because "the subpoenas were served too late into this

litigation," and plaintiffs "ha[d] [not] suggested that this information could not have been sought sooner"); *see also United States ex rel. Gohil v. Sanofi U.S. Servs. Inc.*, No. 02-02964, 2020 WL 1888966, at *1–4 (E.D. Pa. Apr. 16, 2020) (denying defendant's motion to compel compliance with subpoenas for depositions that were served two weeks before the discovery deadline elapsed on the basis of untimeliness, in view of the age of the case, the seven discovery extensions that had been granted previously, and the fact that defendants "had ample time to seek earlier discovery").

15. I note that plaintiffs fail to counter Sinclair's argument that the Second Subpoena should be quashed pursuant to Rule 45(d), because the Second Subpoena would require the disclosure of privileged or protected information from the Criminal Investigation.

16. The amended complaint alleges that plaintiffs' rights were violated by the retaliatory IA Investigation overseen by the HPD and defendants, as well as by other conduct by defendants. But the amended complaint contains no references to any role played by Sinclair or the BCPO in relation to the IA Investigation or in the resulting discipline meted out to plaintiffs by the HPD. (ECF No. 4.) Thus, it is apparent that the only testimony that Sinclair would be able to provide in a deposition would concern the Criminal Investigation conducted by the BCPO, which did not result in the filing of criminal charges against any of the plaintiffs.

17. Indeed, plaintiffs' own submissions filed in conjunction with their opposition to the Motion demonstrate that Sinclair will have nothing to offer as to the IA Investigation. For instance, defendant HPD captain Busciglio testified at his deposition that the HPD "didn't know what was going on" with the BCPO as to the Criminal Investigation. (ECF No. 99-1 p. 6.) Also, two letters from Sinclair and the BCPO addressed to the HPD in July 2017 — once again, both submitted by plaintiffs — notified the HPD that the BCPO had no intention of filing criminal charges in relation to the IA Investigation. (ECF No. 99-1 pp. 25, 27.) In addition, plaintiffs concede that they were disciplined by defendants as a result of defendants' own IA Investigation, and not as a result of any input from Sinclair or the BCPO. (ECF No. 99 p. 4 ("On May 9, 2017, without any direction from the BCPO, the [HPD], at the instruction of the City Manager of Hackensack, Ted Ehrenburg, suspended Detective Duardo and his colleagues in connection with [the IA Investigation].").)

18. Sinclair has pointed to a presumption under New Jersey law concerning the confidentiality of criminal investigations that do not result in criminal charges. Plaintiffs failed to raise any arguments that overcome that presumption, particularly as Sinclair has not been shown to have played any part

5

in the IA Investigation.  *See River Edge Sav. & Loan Ass'n v. Hyland*, 165 N.J. Super. 540, 543–45 (App. Div. 1979) (holding that matters uncovered during a criminal investigation should remain confidential, even if criminal charges do not result (citing *Cashen v. Spann*, 66 N.J. 541 (1975))).  Thus, although I am granting the Motion on the grounds of untimeliness and undue burden, these additional findings further support my conclusion.

Accordingly,

**IT IS** on this   **9th**   day of **August 2021**   **ORDERED** that:

1. The Motion is **GRANTED**.  The Clerk is directed to terminate the Motion at ECF No. 98.

2. The subpoenas served upon nonparty Assistant Prosecutor Brian N. Sinclair are hereby quashed.

 */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

6